UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| K-BEECH, INC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. V-11-46 |
| § | |
| JOHN DOES 1-41, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is John Doe Defendant No. 7's ("John Doe #7") *pro se* Motion to Quash Subpoena and Motion to Sever and Motion to Dismiss (Dkt. No. 12), to which Plaintiff K–Beech, Inc. ("K–Beech") has responded (Dkt. No. 16), and John Doe #7 has replied (Dkt. No. 18). Having considered the motion, response, reply, record, and applicable law, the Court is of the opinion that John Doe #7's Motions to Sever and to Quash Subpoena should be **GRANTED**, and his Motion to Dismiss should be **DENIED** as **MOOT**.

**I. FACTUAL & PROCEDURAL BACKGROUND**

On August 19, 2011, K-Beech filed this action against 41 John Doe Defendants (the "Doe Defendants") alleging that they used a file-sharing protocol called BitTorrent to illegally infringe K-Beech's copyright in a pornographic motion picture entitled *Virgins 4* (the "Work"). This case is part of an "'outbreak of similar litigation . . . around the country,' in which copyright holders have attempted to assert claims against multiple unknown defendants by joining them, in often large numbers, into a single action." *Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590, *1 (N.D. Ga. Dec. 29, 2011) (quoting *On The Cheap, LLC v. Does 1–5011*, 2011 WL 4018258, * 1 (N.D.

Cal. Sept. 6, 2011)).[1] Like the plaintiffs in these other cases, K-Beech claims that each Doe Defendant participated in a "swarm" with many other users, simultaneously uploading and downloading K-Beech's Work. The BitTorrent swarm process has been described as follows:

> In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."
>
> The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects form [*sic*] the swarm or the BitTorrent client otherwise does the same.

*Diabolic Video Prods., Inc. v. Does 1–2099*, 2011 WL 3100404, *1–2 (N.D. Cal. May 31, 2011).

When K-Beech initially filed this action, it claimed to know the Internet Protocol (IP) address of each infringing defendant, but not their real names, addresses, or other identifying information. The entity that possesses information linking an IP address to real identifying information is the Internet Service Provider (ISP) for that IP address. ISPs, such as Comcast or Verizon, maintain temporary internal logs that record the date, time, and customer identity for each IP address serviced by that ISP. Before appreciating the manageability problems posed by joinder of the 41 Doe Defendants, the Court granted K-Beech's Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference, enabling K-Beech to conduct limited

---

1. K-Beech itself has filed a number of nearly identical lawsuits against Doe Defendants in U.S. District courts across the country. *See, e.g.*, *K-Beech, Inc. v. Doe*, CIV.A. 11-7083 (E.D. Pa.); *K-Beech, Inc. v. Does 1-22*, NO. 11-CV-01774-AW (D. Md.); *K-Beech, Inc. v. Does 1-29*, NO. 3:11CV357 (W.D.N.C); *K-Beech, Inc. v. Does 1-57*, NO. 2:11-CV-00358-FTM-36 (M.D. Fla.); *K-Beech, Inc. v. Does 1-29*, NO. CV 11-3331 JTB ETB (E.D.N.Y.).

discovery on the ISPs that service the allegedly infringing IP addresses so that K-Beech could discover the identity of the Doe Defendants and serve them with process. (Dkt. Nos. 5, 9.)

Since the Court's Order permitting such discovery, the ISPs have provided their subscribers with notice of the subpoena, and K-Beech has discovered the identities of at least some of the Doe Defendants. As a result, on December 16, 2011, John Doe # 7, whose contact information has been subpoenaed, moved to quash the subpoena, sever all defendants, and dismiss K-Beech's claims.

On February 8, 2012, K-Beech voluntarily dismissed John Doe #40 pursuant to an undisclosed settlement agreement. (Dkt. No. 19.) K-Beech also filed an Amended Complaint on February 17, 2012, which named Gloria Aguayo, John Doe #7, Landrian Buckham, Thomas Vaugh, and Does #20—29 as defendants. (Dkt. No. 21.) Although the Court previously granted K-Beech's request for leave to take discovery prior to the Rule 26(f) conference, for the reasons set forth the below, the Court finds that John Doe #7, Landrian Buckham, Thomas Vaugh, and Does #20—29 have been improperly joined and must be severed.

## II. Motion to Sever

John Doe #7 argues that the Doe Defendants are not properly joined under Federal Rules of Civil Procedure 20 and 21 and should accordingly be severed from the instant action.

### A. Legal Standard

Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21. Since Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts often look to Rule 20 for guidance. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010). Rule 20 states that permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them

jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). "However, even if this test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay . . . , ensuring judicial economy . . . , or safeguarding principles of fundamental fairness." *Acevedo*, 600 F.3d at 521 (internal citations omitted).

**B. Analysis**

Plaintiffs in a number of other similar cases have argued that "when each defendant is one of many users simultaneously uploading and downloading a protected work, the defendant acts as part of a 'swarm' in a 'series of transactions' involving 'common questions of law and fact.'" *Raw Films*, 2011 WL 6840590, at *1. This practice is known as "swarm joinder" and is the joinder theory relied upon by K-Beech in this action.

The U.S. District Court for the District of Columbia has repeatedly found that joinder is appropriate in cases involving BitTorrent technology. *See, e.g.*, *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F. Supp. 2d 332, 342—45 (D.D.C. 2011); *West Coast Prod., Inc. v. Does 1–5829*, 275 F.R.D. 9, 15—16 (D.D.C. 2011); *Donkeyball Movie, LLC v. Does 1–171*, 2011 WL 1807452, *4–*5 (D.D.C. May 12, 2011).

However, a number of other district courts have found joinder inappropriate in similar BitTorrent cases. *See, e.g.*, *Raw Films*, 2011 WL 6840590, at *1 (finding that "the swarm joinder pleading tactic [was] not appropriate" where "[t]he differing dates and times of each Defendant's alleged sharing d[id] not allow for an inference that the Defendants were acting in concert"); *SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620, *3 (N.D. Cal. Nov. 30, 2011) ("The Court cannot conclude that a Doe Defendant who allegedly downloaded or uploaded a portion of the Motion Picture on May 11, 2011 [and] a Doe Defendant who allegedly did the same on

4

August 10, 2011 . . . were engaged in the single transaction or series of closely-related transactions recognized under Rule 20."); *Third Degree Films v. Does 1–3577*, 2011 WL 5374569, *3 (N.D. Cal. Nov. 4, 2011) (Rule 20 not satisfied even though defendants were alleged to be part of a common swarm where Doe defendants downloaded the protected work at various dates and times ranging over a period of several months); *AF Holdings, LLC v. Does 1-97*, 2011 WL 5195227, *2 (N.D. Cal. Nov. 1, 2011) ("[E]ven though Plaintiff has alleged that Doe Defendants entered into the same swarm and were downloading the same seed file, Plaintiff has not alleged that any of the ninety-seven Doe Defendants exchanged any piece of the relevant file with each other or actually acted in concert with one another."); *Hard Drive Prods., Inc. v. Does 1-30*, 2011 WL 4915551, *3 (E.D. Va. Oct. 17, 2011) ("Plaintiff relies on this "swarm" theory to claim that the Doe Defendants acted in concert through a series of transactions to commit the infringement, giving rise to proper joinder. . . . The Court, however, disagrees with this conception of proper joinder under the Federal Rules of Civil Procedure."); *Raw Films*, 2011 WL 6182025, at *2 ("The mere allegation that the defendants have used the same peer-to-peer network to copy and reproduce the Work—which occurred on different days and times over a span of three months—is insufficient to meet the standards of joinder set forth in Rule 20."); *On The Cheap*, 2011 WL 4018258, at *1 ("I . . . find that plaintiff has not established that joinder would be proper under FRCP 20(a)(2) merely because defendants used BitTorrent to download the same film."); *Hard Drive Prods, Inc. v. Does 1-188*, 2011 WL 3740473, *14 (N.D. Cal. Aug. 23, 2011) ("Even if joinder of the Doe Defendants in this action met the requirements of Rule 20(a) . . . , the Court finds it is appropriate to exercise its discretion to sever and dismiss all but one Doe Defendant to avoid causing prejudice and unfairness to Defendants, and in the interest of justice."); *Boy Racer v. Does 1—60*, 2011 WL 3652521, *4 (N.D. Cal Aug. 19, 2011) ("Allegations that defendants used a single peer-to-peer network to download plaintiff's works—

on different days, at different times, and through different ISPs—is insufficient to allow plaintiff to litigate against sixty different defendants in one action."); *Pac. Century Int'l, Ltd. v. Does 1–101*, 2011 WL 2690142, *4 (N.D. Cal. Jul 8, 2011) (Ryu, Mag. J.) ("Because of this fundamental constraint on the collaboration between copyright infringers using the BitTorrent protocol, the court finds that Plaintiff cannot meet the permissive joinder requirement of Rule 20(a)(2)(A)."); *Diabolic Video Prods.*, 2011 WL 3100404, at *3 (Rule 20 not satisfied even though plaintiff alleged that Doe defendants were part of a common swarm); *Lightspeed v. Does 1–1000*, 2011 U.S. Dist. LEXIS 35392, *4–7 (N.D. Ill. Mar. 31, 2011) (finding that Doe defendants using BitTorrent technology were misjoined on the basis that the putative defendants were not involved in the "same transaction, occurrence, or series of transactions or occurrence" under FED. R. CIV. P. 20(a)(2)(A)); *Millennium TGA Inc. v. Does 1–800*, 2011 U.S. Dist. LEXIS 35406, *3–5 (N.D. Ill. Mar. 31, 2011) (same).

Here, the activity alleged involves 24 defendants, 7 different ISPs, and roughly 3 months of activity. "While [K-Beech] provides the precise date, hour, minute, and second at which it alleges that each Doe Defendant was observed to be sharing the torrent of the copyrighted work, [K-Beech] does not indicate how long each Doe Defendant was in the swarm or if any Doe Defendants were part of the swarm contemporaneously." *See AF Holdings*, 2011 WL 5195227, at *3. K-Beech nonetheless claims that a common hash, or alphanumeric representation, among all Doe Defendants' content files proves that they joined in a common "swarm" that qualifies as the single transaction or series of closely-related transactions recognized under Rule 20. In rejecting the same argument in a recent decision from the Northern District of California, Judge Spero reasoned:

> [E]ven if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated

6

> with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case. In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole. At the very least, there is no proof that bits from each of these addresses were ever assembled into a single swarm.
>
> * * *
>
> Under the BitTorrent Protocol, it is not necessary that each of the Does 1–188 participated in or contributed to the downloading of each other's copies of the work at issue- or even participated in or contributed to the downloading by any of the Does 1–188. Any 'pieces' of the work copied or uploaded by any individual Doe may have gone to any other Doe *or to any of the potentially thousands who participated in a given swarm.* The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world. . . . Indeed, Plaintiff concedes that while the Doe Defendants may have participated in the same swarm, they may not have been physically present in the swarm on the exact same day and time.

*Hard Drive Prods., Inc. v. Does 1–188*, 2011 WL 3740473, at *13—14 (internal quotation marks omitted).

The Court adopts Judge Spero's analysis in *Hard Drive Productions* and finds that K-Beech has failed to establish that joinder is appropriate under Rules 20 and 21; however, even if it had, the Court would nevertheless sever the additional defendants from the instant action for the reasons set forth below.

First, many courts have recognized that the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes. *SBO Pictures*, 2011 WL 6002620, at *3. For example, "[ISP] subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works." *Third Degree Films,* 2011 WL 5374569, at *4. As such, the Doe Defendants will likely present a variety of different defenses based on each defendant's individual circumstances.

7

Next, it would be more efficient to proceed in separate cases based on the numbers and locations of the Doe Defendants and their individual ISPs. The record shows that the Doe Defendants are spread all over the Southern District of Texas, including the Houston, Victoria, and Corpus Christi Divisions. (Dkt. No. 1, Ex. A.) As a result:

> [E]ven though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other with all pleadings—a significant burden when, as here, many of the defendants will be appearing *pro se* and may not be e-filers. Each defendant would have the right to be at each other defendant's deposition—creating a thoroughly unmanageable situation. The courtroom proceedings would be unworkable—with each of the [41] Does having the opportunity to be present and address the court at each case management conference or other event. Finally, each defendant's defense would, in effect, require a mini-trial. These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice.

*Hard Drive Prods, Inc. v. Does 1-188*, 2011 WL 3740473, at *14. *See also AF Holdings*, 2011 WL 5195227, at *3 ("Allowing joinder in this case would involve ninety-six additional defendants, each potentially proceeding with counsel or pro se, and ten additional ISPs, who may also participate in the case. . . . [This] would undermine Rule 20(a)'s purpose of judicial economy and trial convenience.").

Citing *Call of the Wild*, K-Beech claims that severing the Doe Defendants would "effectively prevent plaintiff from being able to enforce its copyright." (Dkt. No. 16 at 20.) In *Call of the Wild*, Judge Howell explained that the plaintiffs would need to file thousands of separate lawsuits, pay the associated filing fees, and then move to issue separate subpoenas to ISPs in search of each defendant's identifying information. 770 F. Supp. 2d at 344–345. Even so, the Court finds that the potential for coercing unjust settlements from innocent defendants[2]

---

2. Thus far, K-Beech has dismissed 17 Doe Defendants from this action, presumably because they agreed to some sort of settlement. The court in *Raw Films* recognized that where, as here, the market value of a work is modest, "[t]he danger of swarm joinder is to enhance the proceeds from a work by extracting settlement amounts that exceed the value of the Work and the litigation. It is conceivable that the swarm joinder device could encourage the creation of works not for their sales or artistic value, but to generate litigation and settlements." *Raw Films*, 2011

trumps K-Beech's interest in maintaining low litigation costs. *See SBO Pictures*, 2011 WL 6002620, at *4 ("[O]ther courts and commentators have noted the flipside of Judge Howell's argument. Namely, 'a consequence of postponing a decision on joinder in lawsuits similar to this action results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages [plaintiffs in copyright actions] to join (or misjoin) as many doe defendants as possible.'"); *IO Group, Inc. v. Does 1–435,* 2011 U.S. Dist. LEXIS 14123, *9 (N.D. Cal. Feb. 3, 2011) ("Plaintiff's motive for seeking joinder, therefore, is to keep its own litigation costs down in hopes that defendants will accept a low initial settlement demand. However, filing one mass action in order to identify hundreds of Doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for.").

Finally, the Court finds that K-Beech would not suffer undue prejudice by severing John Doe #7, Landrian Buckham, Thomas Vaugh, and Does #20—29 and dismissing them from the case without prejudice, as the Court's severance does not preclude Plaintiff from filing individual copyright infringement actions against each severed defendant. The earliest date of an illegal download identified in K-Beech's amended IP Log is April 23, 2011. (Dkt. No. 21, Ex. A at 1.) Under 17 U.S.C. § 507, the statute of limitations of a civil copyright action is three years after the claim accrues. Thus, K-Beech has ample time to file individual lawsuits against each severed defendant should it choose to do so.

As a final matter, the Court notes that it does not condone copyright infringement. "However, [K-Beech's] desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then offer to settle with Doe defendants so that they can avoid

---

WL 6840590 at *2 (citing *On The Cheap*, 2011 WL 4018258, at *3 n.6). "The risk of inappropriate settlement leverage is enhanced in a case like this involving salacious and graphic sexual content where a defendant may be urged to resolve a matter at an inflated value to avoid disclosure of the content the defendant was accessing." *Id.*

digging themselves out of the morass plaintiff is creating." O*n The Cheap, LLC v. Does 1-5011*, 2011 WL 4018258, *4 (N.D. Cal. Sept. 6, 2011).

### IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED** as follows:

(1) All defendants except for Gloria Aguayo are hereby **SEVERED** from this action;

(2) The subpoenas served on the ISPs listed in Exhibit A of K-Beech's Complaint (Dk. No. 1) are hereby **QUASHED** as to all Doe Defendants except Gloria Aguayo;

(3) K-Beech **SHALL IMMEDIATELY NOTIFY** the recipients of these subpoenas that said subpoenas have been quashed and that the Doe Defendants, except Gloria Aguayo, have been severed and are not litigants in this case;

(4) The ISPs are directed to file, under seal, copies of all notices sent to Doe Defendants pursuant to paragraphs 2 and 3 above;

(5) Civil Action No. 6:11-cv-46 shall be assigned to Gloria Aguayo as an individual defendant;

(6) Within thirty (30) days from the entry of this Memorandum Order & Opinion, K-Beech may file individual complaints against those Doe Defendants located within the Victoria Division against whom it wishes to proceed. Upon election to proceed, K-Beech shall submit to the Clerk of the Court the $350 filing fee for each complaint. Each case will be assigned a separate civil action number and placed on the Court's docket. Each case will be deemed to have been filed as of August 19, 2011, the date of the filing of the original Complaint;

(7) Any other filings that could be construed as motions in this action are hereby **DENIED as MOOT**.

**SIGNED** this 8th day of March, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE